**SEALED**

**FILED**
FEB 0 5 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. |
| Plaintiff, | ) ) | SA20CR0095 JKP |
| v. | ) ) | INDICTMENT |
| JOSHUA LOPEZ (1), | ) ) | VIO: 18 USC § 371 & |
| CHRISTOPHER MONTOYA (2), | ) ) ) | 42 USC § 1320a-7b(b)(1) Conspiracy to Receive Health Care Kickbacks; 18 USC § 1343 Wire Fraud |
| Defendants. | ) ) ) | |

THE GRAND JURY CHARGES:

## COUNT 1
[18 U.S.C. § 371]

### Introduction

At all times material to this Information:

TRICARE

1. TRICARE is a health care program of the United States Department of Defense (DoD) Military Health System that provided coverage for DoD beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors. Individuals who are insured by TRICARE will be referred to as TRICARE beneficiaries.

2. TRICARE was a "health care program" as defined by 42 U.S.C. § 1320a-7b(b)(f), that affected commerce, and as that term is used in 42 U.S.C. § 1320a-7b(b).

1

3. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. (Express Scripts) administered TRICARE'S prescription drug benefits.

Compounding

4. Compounding is a practice in which a licensed pharmacist, a licensed physician, or a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the specific needs of an individual patient. Compounded drugs are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

5. Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared for that patient which excludes the substance that triggers the allergic reaction.

CO-CONSPIRATORS

6. A company known to the Grand Jury but referred to herein as Company 1 was a Texas Limited Liability Company having an office in San Antonio, Texas. Co-conspirator 1(CC-1), not charged herein, was the owner of Company 1 and routinely exerted direct control over various aspects of the operations of Company 1 that are relevant to this Indictment.

7. CC-1, entered into an agreement with a pharmacy, known to the Grand Jury, but referred to herein as Pharmacy 1 to receive kickbacks from Pharmacy 1 for every compounded prescription that was referred to Pharmacy 1 by Company 1, CC-1 or others working with CC-1. Pharmacy 1 had its principal place of business in California.

8. Defendant JOSHUA LOPEZ owned and operated Coastal Management Group, a Texas corporation.

9. Co-Conspirator 2 (CC-2), not charged herein, was a member of the Texas Air National Guard.

10. Defendant CHRISTOPHER MONTOYA was a licensed physician's assistant, authorized under the law to write prescriptions for, among other things, compounded drugs.

11. Between on or about February 1, 2015 through on or about June 30, 2015 in the Western District of Texas, and elsewhere, the defendants,

**JOSHUA LOPEZ**
**and**
**CHRISTOPHER MONTOYA,**

together with coconspirators who are not charged herein, did knowingly and willfully combine, conspire, confederate, and agree with each other to commit offenses against the United States, that is, to knowingly and willfully solicit, receive, offer, pay, and aid and assist in the soliciting, receiving, offering and paying of remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for

a. referring an individual to a person for the furnishing, and arranging for the furnishing, of any item and service for which payment may be made in whole or in part under a federal health care program, and/or

b. purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service and item for which payment may be made in whole or in part under TRICARE, a federal health care program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and (B); and 1320a-7b(b)(2)(A)

and (B).

## Objective

12. The objective of the conspiracy was to enrich LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1.

## Manner and Means

13. As part of the manner and means of the conspiracy LOPEZ and MONTOYA, and their co-conspirators, devised and executed a scheme to defraud TRICARE by making and receiving kickbacks in connection with the prescription of compounded drugs to TRICARE beneficiaries.

14. As part of the scheme, CC-2 induced members of his military unit who were TRICARE beneficiaries to fill out computer health surveys. CC-2 advised the TRICARE beneficiaries that if they completed the surveys they would get pain creams and/or weight loss aids that would be fully paid for by TRICARE. The online surveys required the TRICARE beneficiaries to provide information such as their social security number and date of birth as well as other general information.

15. As part of the scheme, CC-1 sent the TRICARE beneficiaries' information to MONTOYA, who then wrote a prescription for one or more compounded drugs without ever examining or even speaking with the TRICARE beneficiaries, which MONTOYA then returned to CC-1.

16. As part of the scheme, CC-1 then sent the prescription to Pharmacy 1. Pharmacy 1 would then either fill the prescription itself or send the prescription to another pharmacy who would fill the prescription for Pharmacy 1. Pharmacy 1 or the pharmacy working with Pharmacy 1 then billed TRICARE for the prescription. Pharmacy 1 paid CC-1 a percentage

of the money obtained from TRICARE as a kickback for each prescription referred by CC-2 and other co-conspirators both known and unknown.

17. As part of the scheme, CC-1 paid CC-2 a monetary kickback for every TRICARE beneficiary that CC-2 got to complete the online survey and for which TRICARE was billed. These payments were made by CC-1 to Coastal Management Group, and LOPEZ then paid the money to CC-2 through Coastal Management Group's bank accounts.

18. As part of the scheme CC-1 paid MONTOYA a monetary kickback for every TRICARE beneficiary prescription written by MONTOYA for which TRICARE paid Pharmacy 1.

19. In some instances, CC-2 induced TRICARE beneficiaries to fill out the online surveys by giving them iPads or laptop computers. In other instances, when TRICARE beneficiaries who had completed the online survey did not receive their compounded prescription, CC-2 would give them an iPad or laptop computer.

20. While the prescriptions submitted to Pharmacy 1 bore the signature of MONTOYA, the TRICARE beneficiaries did not see or consult with MONTOYA. In fact, the TRICARE beneficiaries did not see or consult with any medical professionals in order to obtain the prescriptions, but instead only filled out the online survey.

21. It was part of the scheme that payment for the prescriptions were submitted to TRICARE electronically. Payment requests to TRICARE falsely represented material facts, namely, that there was a medical necessity for the prescription being billed and that MONTOYA had a medical relationship with the TRICARE beneficiary being billed for the prescription.

22. During the course of the conspiracy, LOPEZ, MONTOYA, and their co-conspirators caused TRICARE to be billed more than $3.5 million.

## Overt Acts

23. In furtherance of the conspiracy and to effect its objects and purposes, the conspirators committed the following overt acts and others:

a. On or about February 11, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 caused TRICARE to be billed $74,282.30 for prescriptions in the name of TRICARE beneficiary CC-2.

b. On or about February 12, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 caused TRICARE to be billed $74,282.30 for prescriptions in the name of TRICARE beneficiary 1.

c. On or about February 21, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 caused TRICARE to be billed $59,362.33 for prescriptions in the name of TRICARE beneficiary 2.

d. On or about February 23, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 caused TRICARE to be billed $59,362.33 for prescriptions in the name of TRICARE beneficiary 3.

e. On or about February 26, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 caused TRICARE to be billed $59,362.33 for prescriptions in the name of TRICARE beneficiary 4.

f. On or about March 26, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 through a pharmacy working with Pharmacy 1 caused TRICARE to be billed $166,080.19 for prescriptions in the name of CC-2.

g. On or about March 26, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 through pharmacy working with Pharmacy 1 caused TRICARE to be billed $78,352.67 for

prescriptions in the name of TRICARE beneficiary 5.

h. On or about March 26, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 through a pharmacy working with Pharmacy 1 caused TRICARE to be billed $33,395.36 for prescriptions in the name of TRICARE beneficiary 6.

i. On or about April 6, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 through a pharmacy working with Pharmacy 1 caused TRICARE to be billed $161,824.57 for prescriptions in the name of TRICARE beneficiary 7.

j. On or about April 6, 2015 LOPEZ, MONTOYA, CC-1, CC-2, and Pharmacy 1 through a pharmacy working with Pharmacy 1 caused TRICARE to be billed $50,399.21 for prescriptions in the name of beneficiary 6.

k. From on or about December 12, 2014 through on or about April 20, 2015, Company 1 and/or CC-1 received approximately $3,405.293.10 from Pharmacy 1 as payments for prescriptions referred to Pharmacy 1 by Company 1, LOPEZ, CC-1, CC-2, and others both known and unknown that were billed to TRICARE.

l. From on or about March 25, 2015 through on or about April 22, 2015, LOPEZ and/or Coastal Management Group received approximately $983,517.56 from Pharmacy 1 as payments for prescriptions referred to Pharmacy 1 by Company 1, LOPEZ, CC-1, CC-2, and others both known and unknown, that were billed to TRICARE.

m. From on or about March 19, 2015 through on or about April 23, 2015 CC-2 received approximately $82,000 from LOPEZ, CC-1, and Pharmacy 1 as payments for prescriptions that CC-2 referred and that were billed to TRICARE.

All in violation of Title 18, United States Code, Section 371.

<u>COUNTS TWO THROUGH NINETEEN</u>
[18 U.S.C. § 1343]

The Introduction to Count One of this Indictment is incorporated herein as if fully restated.

<u>The Scheme</u>

Between on or about February 1, 2015 through on or about June 30, 2015 in the Western District of Texas, and elsewhere, the defendants,

**JOSHUA LOPEZ
and
CHRISTOPHER MONTOYA,**

aided and abetted by CC-1 and CC-2, did knowingly and willfully did unlawfully, willfully, and knowingly devise and execute a scheme to defraud TRICARE and to obtain money by means of false and fraudulent pretenses, representations and promises through the actions set forth in the "Manner and Means" portion of Count One, which are incorporated herein as if fully restated.

<u>The Executions of the Scheme</u>

On or about the date stated below, for the Count listed below, in the Western District of Texas and elsewhere, the defendants,

**JOSHUA LOPEZ
and
CHRISTOPHER MONTOYA,**

aided and abetted by CC-1 and CC-2, and for the purpose of executing the scheme to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by wire in interstate and foreign commerce email sending prescriptions for a named TRICARE beneficiary, known to the Grand Jury but identified herein only by initials from CC-1 in San Antonio, Texas, to Pharmacy 1 in California, as set forth below.

| Count | Date | TRICARE Beneficiary | Claim amount |
|---|---|---|---|
| Two | 2/11/2015 | J.G. | $59,362.33 |
| Three | 2/12/2015 | G.G. | $74,282.30 |
| Four | 2/23/2015 | T.C. | $54,255.26 |
| Five | 2/17/2015 | J.H. | $59,362.33 |
| Six | 2/18/2015 | I.G. | $59,362.33 |
| Seven | 2/20/2015 | R.H. | $59,362.33 |
| Eight | 2/21/2015 | T.M. | $59,362.33 |
| Nine | 2/21/2015 | L.M. | $59,362.33 |
| Ten | 2/23/2015 | W.B.D.R. | $59,362.33 |
| Eleven | 2/23/2015 | K.W. | $59,362.33 |
| Twelve | 2/24/2015 | M.R. | $59,362.33 |
| Thirteen | 2/24/2015 | Z.P. | $59,362.33 |
| Fourteen | 2/24/2015 | C.P. | $59,362.33 |
| Fifteen | 2/24/2015 | A.M. | $59,362.33 |
| Sixteen | 3/13/2015 | V.D. | $90,442.03 |
| Seventeen | 3/14/2015 | V.D. | $32,679.90 |
| Eighteen | 3/14/2015 | M.D. | $123,121.93 |
| Nineteen | 3/26/2015 | J.G. | $166,080.19 |

All in violation of Title 18, United States Code, § 1343.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P. 32.2]

### I.
### Health Care Fraud Violations and Forfeiture Statute
[Title 18 U.S.C. §§ 371 and 1343 and Title 42 U.S.C. § 1320a-7b(b)(1), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(7)]

As a result of the foregoing criminal violations set forth in Counts One through Thirteen, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of property, including the below described properties, upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(7), which states:

**Title 18 U.S.C. § 982.  Criminal forfeiture**
(a)(7) The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

This Notice of Demand for Forfeiture includes but is not limited to the properties described below in Paragraphs II-IV.

### II.
### Real Property

Real Property located and situated at **12526 Red Maple Way, San Antonio, Texas 78253, Bexar County, Texas** with all buildings, appurtenances, and improvements, thereon and any and all surface and sub-surface rights and interests, if any, and being more fully described as:

Lot 4, Block 32, ALAMO RANCH UNIT 10, a Subdivision in Bexar County, Texas, According to the map or plat thereof recorded in Volume 9612, pages 170-172, Deed and Plat Records of Bexar County, Texas.

## III.
## Money Judgment

**Money Judgment**: A sum of money which represents the proceeds derived, directly or indirectly, as a result of the violations set forth above for which each Defendants is solely liable.

## IV.
## Substitute Assets

If any of the proceeds, including the property described above, subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

_____
FOREPERSON

JOHN F. BASH
United States Attorney

_____
for WILLIAM R. HARRIS
Assistant United States Attorney

_____
JUSTIN CHUNG
Assistant United States Attorney